LEWIS, Appellant, vs. FARMERS' MUTUAL FIRE INSURANCE COMPANY OF THE TOWN OF CLARNO, Respondent.

*January 12—February 9, 1915.*

*Insurance: Lightning: Loss of horse: Adjustment procured by fraud: Pleading: Evidence: False representations made through another person: Estoppel: Retention of assessment paid.*

1. In an action upon a mutual insurance policy to recover for loss of a horse claimed to have been injured by lightning, the evidence is *held* to sustain findings by the jury to the effect that the con-

dition of the horse was not the result of injury from lightning, and that by false and fraudulent representations plaintiff had induced defendant's officers to include his claim in an assessment levied by them.

2. Under an answer alleging that plaintiff made such false and fraudulent representations, it was competent to show that he caused the representations to be made to the defendant through a veterinary surgeon by means of wilful, intentional misstatements to the latter or concealment of material facts from him; and the effect of the representations so made was the same as if plaintiff made them personally.

3. The inclusion of plaintiff's claim among those for which the assessment was levied, having been induced by fraud, had no binding force as an adjustment or settlement of the claim.

4. Plaintiff being a member of the defendant company and insured against loss on other property, the amount paid by him on such assessment was properly retained by defendant, the fact that the loss of the horse was not covered by his policy making no difference.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Action upon an insurance policy to recover for the loss of a horse claimed to have been injured by lightning. The answer denied the fact that the horse was injured by lightning and alleged that defendant was induced to adjust the loss by reason of the false and fraudulent representations of the plaintiff that the cause of the injury to the horse was lightning. The horse, it was alleged, was injured on September 5, 1910, during the life of the policy, was rendered useless, and on the 18th of September it was, by the advice of a veterinary surgeon, killed. November 1, 1910, an assessment, including plaintiff's claim, was levied and plaintiff paid his share thereof. The jury found (1) that plaintiff knowingly and with intent to cheat and defraud the defendant falsely and fraudulently represented to its officers whose duty it was to investigate and pass upon his claim that the horse was injured by lightning; (2) that said officers of the defendant believed and relied upon such false and fraudulent representations at the time they included plaintiff's claim in the as-

sessment levied November 1, 1910; (3) that the officers of the defendant were induced by said false and fraudulent representations to include plaintiff's claim for $100 in the assessment of November 1, 1910; and (4) that the condition of the horse was not the result of injury from lightning. Judgment upon the verdict was entered for the defendant and the plaintiff appealed.

*J. L. Sherron,* for the appellant.

*Wm. H. McGrath* and *Oliver S. Rundell,* for the respondent.

VINJE, J.   1. It appears from the evidence that the horse while at pasture on September 18th had slid or fallen into a creek; that while lying there he was, at the instance of plaintiff, examined by Dr. Raub, a veterinary surgeon, who from his examination concluded the cause of his injury was lightning and so reported to the company for and on behalf of plaintiff.   It further appeared from plaintiff's own testimony that the horse was ailing as early as September 5th.   He testified as follows:

"On September 5, 1910, I shipped hogs to Chicago.   I was in Chicago a few days, and I came home, met the hired man, Harry Butts.   Butts told me Billy had been down.   He had got him up himself every morning since I was gone.   Next morning Irving told me the same thing.   *Q.* Was anything said about lightning?   *A.* He said he found him over in the pasture on the bank, and the way he was lying and when he got him up he thought he was struck by lightning.   I said we would leave the horse in the pasture where he was a few days. Maybe he would get better.   About September 11th he fell in the creek.   And we took a team and chain; we pulled him out.   It was a slippery, muddy place; low bank, no higher than the horse's side.   I drove the team myself and hauled him out on the bank.   The horse stood around the barn a couple of days and he would go up in the pasture and eat well.   Along about the 17th or 18th of September he went down in the pasture and could not get up.   So I called him (Dr. Raub) on the 18th.   He says, 'What is the matter?'

I says, 'I have a horse over here in the pasture; I think he was struck by lightning; all the symptoms are like it.' I told him about the 5th of September, when I was in Chicago; when I came home the boy said he was down, and he wanted to know why I hadn't called him sooner. I said I thought he would get over it by himself and I would not be bothered in calling a doctor. After he killed the horse he says, 'The horse is paralyzed.' He says, 'You have the horse appraised and I will notify the company when I go down. I will notify them. You don't need to notify them. I have acted many times for the company. They will accept my testimony this time.' "

Dr. Raub testified that plaintiff did not inform him that the horse had fallen down previous to the 18th when he examined him, and that he paid some attention to the fact that plaintiff informed him the horse had been all right before it got down where it was September 18th; that such information was material; that had he known the horse had been pulled out of the creek a few days before by hitching a chain to his legs he would not have been of the opinion that the horse was injured by lightning. There is further evidence by one Loomis, who had worked for plaintiff during the summer, that previous to September 5th the horse seemed to have spine trouble, he could not get his head up; his gait when he walked was "waving around;" when working he would give out and another horse would have to be substituted for him; that this happened a number of times, and the plaintiff was informed of and knew it.

There is nothing to show that the officers of the defendant did not rely upon the statement made to them by Dr. Raub. They reposed confidence in him, as he had often been employed by them to investigate claims, and relied upon the statements made by him as to the cause of injury to the horse. It is true that fraud must be established by clear and satisfactory evidence and that the burden to so establish it rests upon the party making the charge. The defendant seems to

have satisfied both the trial court and the jury that fraud on
the part of plaintiff was established by evidence sufficiently
clear and satisfactory to satisfy the rule announced. We
cannot say that the proof fails to meet the legal requirements.
The evidence justifies every answer made by the jury.

2. The court instructed the jury relative to the first ques-
tion that they were "not limited in the scope of this inquiry
to representations made by plaintiff personally to the presi-
dent, secretary, or treasurer of the company, but" it "includes
representations made to them by the plaintiff indirectly
through another. In other words, if the plaintiff by wilful,
intentional misstatements or concealments of fact to Dr. Raub
caused such false representations to be made or conveyed to
such officer, their effect is the same as if made by plaintiff
himself." Exception is taken to this charge on the ground
that there is nothing in the testimony to warrant it and that
there were no sufficient allegations in the pleadings to sustain
a charge that plaintiff made misstatements to Dr. Raub or
concealed material facts. The exception is not well taken.
The answer sufficiently charges the fact of fraud and the evi-
dence warrants the instruction. The jury were justified in
finding that plaintiff misstated and concealed material facts
in his conversation with Dr. Raub.

It was not necessary, as urged by plaintiff's counsel, that
the answer should allege that the false representations were
made to defendant by plaintiff *through an agent,* naming him.
It was sufficient to allege the fact that plaintiff was guilty of
fraudulent conduct, stating wherein it consisted. Under such
an allegation proof of fraud by plaintiff personally or through
an agent, or both, was admissible. The maxim *Qui facit per
alium facit per se* is still recognized in law. "An allegation
as to the act of the principal includes the act of the agent."
*Burnham v. Milwaukee,* 69 Wis. 379, 384, 34 N. W. 389.

3. The claim that the inclusion of plaintiff's loss in the as-
sessment of November 1, 1910, constituted an adjustment

thereof binding upon the company and not capable of being defeated by proof of fraud on the part of plaintiff inducing it, cannot be sustained. The case was tried upon the theory that a settlement of the loss had been made, and the material question passed upon by the jury was whether or not such settlement had been obtained by means of fraud. The jury found that it had and that destroyed its binding effect and left plaintiff to recover, if he could, upon the strength of his policy. Since the jury negatived injury from lightning, he failed to show injury within the terms of the policy and judgment was properly awarded the defendant.

4. Plaintiff was insured to the amount of $2,800 on buildings, live stock, farm utensils, etc., so defendant properly kept his share of the assessment levied November 1st, as he was still a member. The fact that his horse had died from a cause not covered by the policy made no difference as to the amount of the assessment due from him.

*By the Court.*—Judgment affirmed.